IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE CELLULAR TELEPHONE SEIZED FROM THE PERSON OF CECELIA SMITH | No. 1:23-mj-00078-JCN<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Nicholas C. Rich, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for a purple colored Apple iPhone, hereinafter referred as the "Cellular Telephone." The Cellular Telephone was seized from Cecelia SMITH ("SMITH") by the Bangor Police Department on April 6, 2023, and then transferred to the custody of Drug Enforcement Administration (DEA) Special Agent Nicholas Rich. The Cellular Telephone is currently secured in DEA evidence in Bangor, Maine. This affidavit and accompanying application are part of an ongoing drug trafficking investigation being conducted by the Drug Enforcement Administration in Bangor, Maine. I have probable cause to believe that the Cellular Telephone contains evidence in the form of communications, images, data, records and other information concerning the distribution, or possession with intent to distribute illegal drugs, and conspiracy to engage in such conduct, in violation of Title 21, United States Code, Sections 841 and 846.

2. I am a Special Agent with the U.S. Drug Enforcement Administration ("DEA") and have been since February of 2008. I am presently assigned to the Bangor, Maine, office and have received extensive training pertaining to narcotic investigations

and the investigation of various crimes which arise from drug trafficking activities. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c). As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. I am conducting an investigation into the drug trafficking activities of Cecelia SMITH and Matthew BROOKS. During the investigation, I have gathered evidence indicating that SMITH and others are involved in the distribution of substantial quantities of fentanyl and methamphetamine in Penobscot and Aroostook Counties in Maine. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that SMITH has committed one or more violations of Title 21 of the United States Code, including Sections 841 (distribution, or possession with intent to distribute, of controlled substances) and 846 (conspiracy).

4. During my employment with DEA, I have participated in numerous investigations relating to the distribution of controlled substances, including cocaine, heroin, fentanyl, methamphetamine, diverted pharmaceuticals and other substances in violation of the federal anti-drug laws, including Title 21, United States Code, Sections 841 and 846. I have conducted or participated in, among other things, surveillance, the execution of search and arrest warrants, debriefings of informants and confidential sources, and reviews of taped conversations relating to narcotics trafficking. I have authored drug-related search warrant requests and successfully executed such warrants resulting in the seizure of drugs and other contraband. I have also assisted in the execution of numerous drug-related search and arrest warrants. I have received

extensive training in the field of narcotics enforcement and investigations. I am very familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the trafficking of illegal drugs.

5. The facts in this affidavit come from my personal observations, my training and experience, phone analysis, and information obtained from other law enforcement officers/agents and witnesses. Where I assert that a statement or observation as made, I did not personally hear the statement or make the observation unless specifically so stated. Instead, the information was provided to me by a witness or another law enforcement officer, either verbally or in writing, who had direct or indirect knowledge of the statement or observation.

6. I am seeking to have the contents of the Cellular Phone copied and/or reviewed to identify and obtain the "Items to be Seized" identified below.

## ITEM TO BE SEARCHED

7. A Cellular Telephone described as follows:

   a. One purple colored Apple iPhone, seized by Bangor Police Officer Shane Smith, from Cecelia SMITH, during SMITH's arrest on April 6, 2023 in Bangor, Maine. The purple colored Apple iPhone is currently located in the DEA Bangor Post of Duty Non-Drug Evidence locker in Hermon, Maine. (Photographs of device attached).

## ITEMS TO BE SEIZED

8. I have probable cause to believe that in these devices are the following items of evidence:

   a. Drug customer lists, business records, address and telephone lists, digital photographs, digital videos, personal calendar entries, travel logs, payment, delivery receipts, e-mail messages, text messages, voice mail messages, internet search queries, history lists, and GPS coordinates contained on the device which are evidence of offenses set forth in Title 21,

3

United States Code, Section 841, et seq., and which are seizable pursuant to Federal Rule of Criminal Procedure 41.

b. Computer hardware, software, and data contained on the device, which are evidence of offenses set forth in Title 21, United States Code, Section 841, et seq., and which are seizable pursuant to Federal Rule of Criminal Procedure 41.

## **PROBABLE CAUSE**

9. DEA and the Maine Drug Enforcement Agency (MDEA) are conducting a criminal investigation of SMITH and others regarding one or more violations of Title 21, United States Code, Section 841, *et seq*. Based on the facts set forth in this affidavit, there is probable cause to believe that one or more violations of federal anti-drug laws, including Title 21, United States Code, Section 841, *et seq*. have been committed by SMITH and others and may involve persons that have yet to be positively identified.

10. In February of 2023, I cultivated a DEA confidential source, hereafter referred to as CS-1[1], who identified Cecelia SMITH (SMITH) as a Bangor, Maine based source of supply for bulk quantities of fentanyl and methamphetamine. CS-1 stated SMITH travels from Bangor, Maine to several towns in Aroostook County, Maine, and distributes both fentanyl and methamphetamine to several Aroostook County based customers on a weekly basis. CS-1 stated he has accompanied SMITH on several of the aforementioned trips to Aroostook County, Maine and has witnessed SMITH distribute

---

[1] CS is referred to as a male, regardless of actual gender. CS is currently a defendant in two separate Maine State criminal cases involving unlawful possession of narcotics. CS is cooperating with law enforcement for consideration towards those pending criminal cases. I have not promised CS that he will receive a lower sentence as a result of his cooperation. CS' criminal history includes convictions for Theft, violations of conditions of release, Burglary, Unlawful possession of drugs, Harassment by telephone, Domestic Violence Assault, Criminal Trespass, and trafficking in prison contraband. CS' information has been independently corroborated by law enforcement on several occasion and deemed credible.

drugs and collect drugs proceeds. CS-1 stated in February of 2023, when he accompanied SMITH to Aroostook County, Maine, CS-1 witnessed SMITH communicate with several drug customers over her (SMITH's) cellular telephone. CS-1 specifically stated that he witnessed SMITH contact drug customers over the telephone, and then met with those unidentified customers at the "Military base in Presque Isle, Maine." According to CS-1, during that February 2023 trip, SMITH attempted to post bail for Carl THIBEAULT, but was unable to do so as THIBEAULT was denied bail on February 27, 2023. On February 28, 2023, TFO Jon Richards confirmed THIBEAULT had been arrested for possession of approximately 60 grams of methamphetamine and had been denied bail following that charge.

11. CS-1 stated SMITH is distributing "sticks" of fentanyl for approximately $1,000.00 each and described the fentanyl as being "high quality" fentanyl that can be smoked. I know "sticks" and/or "fingers" to be slang terminology describing 10 grams of individually packaged fentanyl.

12. CS-1 identified SMITH's vehicle as a tan colored Honda CRV and identified SMITH's residence as the "Together Place", a community living establishment located at 148 Union Street in Bangor, Maine. During February to the present, I have conducted multiple surveillance operations on SMITH, and her boyfriend Matthew BROOKS, at the Together Place, during which time I confirmed SMITH's vehicle to be the aforementioned tan colored Honda CRV, bearing Maine registration 8768ZH, registered to Matthew BROOKS.

13. CS-1 identified several of SMITH's Aroostook County based customers and co-conspirators, including John DINIUS, Tiffany HYSON, Olivia Lee BABIN, and Justin

5

CORMIER. I am familiar with DINIUS and HYSON from prior investigations and intelligence reports.

14. In February of 2023, CS-1 identified SMITH's phone numbers as 207-631-0434 and 207-944-3221. On April 6, 2023, I served an administrative subpoena to U-Haul Moving and Storage, located at 415 Odlin Road, Bangor, Maine. I subsequently received lease agreements for storage Units rented by SMITH and Matthew BROOKS. SMITH began renting storage unit 2162 in September of 2022, during which time she identified her phone number as 207-951-3405. BROOKS began renting storage unit number 1762 since approximately March of 2022 and identified his contact phone number as 207-991-8521. BROOKS listed a "secondary access user" on his account in the name of Ricky ROSRIO of 256 Union Street, Bangor, Maine, and contact number 207-944-3221. I believe ROSRIO is not a real person as his phone number was identified by CS-1 as a cellular telephone used by SMITH, and ROSRIO's address (256 Union Street, Bangor, Maine) is an unoccupied commercial building in Bangor, Maine.

15. According to CS-1, SMITH uses multiple cellular telephones to communicate with co-conspirators and criminal associates. CS-1 specifically stated that SMITH also utilizes TextNow, an application on SMITH's phone to disguise her actual phone number. CS-1 further stated that SMITH also uses her cellular telephone to communicate with co-conspirators through Facebook Messenger. CS-1 was asked if he and SMITH discuss drug trafficking activities over the phone, to which CS-1 confirmed that they do on a regular basis. CS-1 clarified that he and SMITH discuss the purchase and sale of drugs over both text and Facebook Messenger.

16. CS-1 stated he has known SMITH for several years and has known SMITH to be involved in the use, transportation, and distribution of drugs during that time. According to CS-1, SMITH began purchasing bulk quantities of drugs from an unidentified black male from "New York or Connecticut" approximately two years ago. CS-1 further stated SMITH fell into debt to the unidentified source of supply, and then began transporting bulk quantities of drugs to Aroostook County, Maine to pay off her debt.

17. Most recently, on April 6, 2023, CS-1 showed me several text messages he had received from SMITH. The messages included both text conversations and videos, and corroborated SMITH's use of phone number 207-631-0434. On April 5, 2023, SMITH, using phone number 207-631-0434, sent a text message to CS-1, instructing CS-1 not to text SMITH to phone number 207-631-0434, because BROOKS had "looked through" that phone.

18. On November 9, 2022, DEA Bangor TFO Jon Richards participated in a proffer interview of CS-2.[2] During this proffer, CS-2 stated he previously dated SMITH, and admitted that he and SMITH were involved in the transportation and distribution of fentanyl from Bangor to Aroostook County, Maine. CS-2 did not provide a time period of when he and SMITH had distributed drugs in Aroostook County, Maine. However, CS-2

---

[2] CS-2 is referred to in the male gender, regardless of actual gender. The proffer interview was conducted pursuant to the terms of a standard proffer agreement used by the U.S. Attorney's Office for the District of Maine. CS-2 is being prosecuted for a federal firearms offense. He has since signed a standard plea and cooperation agreement. CS-2 is cooperating in hopes that he will receive consideration at the time of sentencing, however, no promises have been made to him in that regard. CS-2's criminal history includes convictions for Aggravated Sexual Assault of a Child, Theft, Criminal Mischief, Assault, Rape, and Possession of a firearm by a prohibited person.

was arrested in June of 2022, which leads me to believe CS-2 and SMITH would have distributed drugs prior to that date.

19. CS-2 specifically stated that SMITH had several customers in Aroostook County, and would purchase a "finger" of fentanyl for $100 in Bangor, Maine, and then sell it for $1,200.00 in Aroostook County, Maine. CS-2 further stated that he had traveled with SMITH to Presque Isle, Maine and observed SMITH conduct several drug transactions.

20. On March 21, 2022, Maine Drug Enforcement Agency (MDEA) Special Agent (SA) Bill Campbell participated in a debrief of defendant CS-3[3], at the Houlton, Maine District Courthouse. On that date, CS-3 identified SMITH as a source of supply for methamphetamine and fentanyl. CS-3 stated SMITH obtains drugs from "downstate" and then transports the drugs to Aroostook County, Maine for distribution. CS-3 stated he owed SMITH $350 from a past drug deal as of the date of that debrief (March 21, 2022). CS-3 further stated that he witnessed SMITH distribute drugs to a person named "TIFFANY" in Aroostook County, Maine.

21. SA Campbell participated in a previous interview of CS-3, which took place on January 27, 2021. During the January 27, 2021 debrief, CS-3 initially identified SMITH as a source of supply for heroin and methamphetamine in Madawaska, Maine. On that date, CS-3 stated SMITH sold drugs to Tiffany HYSON for between $900 to

---

[3] CS-3 is referred to in the male gender, regardless of actual gender. CS-3 participated in the interview in hopes of receiving sentencing in pending state cases. I reviewed a copy of the interview report in connection with the preparation of this affidavit. No promises of leniency were made to him, however. CS-3's criminal history includes convictions for Theft, Domestic Violence, and Unlawful Possession of Scheduled Drugs.

8

$1000 per ounce of methamphetamine. CS-3 was asked to identify the last time he witnessed SMITH distribute drugs to HYSON, to which CS-3 stated it was approximately three weeks prior to his debrief on January 27, 2021. I believe this shows SMITH was involved in the distribution of methamphetamine and fentanyl in 2020, and continued to distribute drugs until the present.

22. On March 21, 2022, Bangor Police Officer Taylor Reynolds responded to a complaint, described as a person displaying a firearm in a threatening manner. Officer Reynolds subsequently traffic stopped Matthew BROOKS and Cecelia SMITH as they attempted to leave the scene. BROOKS was found in possession of a usable amount of cocaine, but denied being in possession of a firearm. A subsequent search of the vehicle revealed a Ruger handgun and approximately 81 grams of methamphetamine. Both SMITH and BROOKS were advised of their Miranda Rights and chose not to speak to law enforcement on that date. According to Officer Reynolds, upon the discovery of the methamphetamine and handgun, SMITH claimed the drugs and firearm belonged to her.

23. On May 3, 2022, East Millinocket Police Officer Patricia McLaughlin responded to a complaint of a person using drugs inside the bathroom of a Circle K store in Millinocket, Maine. Officer subsequently located Nicole MURPHY, who stated she was in Millinocket, Maine to meet with "CeCe" SMITH and TIFFANY. MURPHY was released and was then observed being picked up by SMITH. Officer McLaughlin subsequently arrested SMITH, and her passenger Tiffany HYSON, both on outstanding warrants. A subsequent search of the vehicle revealed approximately 14.8 grams of crack cocaine, a half a gram of fentanyl, and numerous pieces of drug paraphernalia and drug

9

packaging material. Officer McLaughlin also seized a pink Samsung flip phone from SMITH's possession. According to Officer McLaughlin's report, on May 4, 2022, Officer McLaughlin was contacted by Matthew BROOKS. BROOKS identified himself as SMITH's boyfriend and claimed ownership of the pink cellular telephone. Officer McLaughlin stated the phone was going to be kept as evidence, at which time BROOKS became "irate" and demanded the phone. I believe this incident shows SMITH uses her cellular phones to facilitate the purchase and sale of narcotics, and BROOKS' attempt to recover SMITH's phone from law enforcement on May 4, 2022 was for the purpose of preventing law enforcement from accessing her phone and obtaining evidence of SMITH's continued drug conspiracy.

24. On April 5, 2023, I received information from CS-1, stating SMITH and BROOKS rent storage units on Odlin Road in Bangor, Maine. CS-1 stated approximately two weeks ago, while BROOKS was out of town, SMITH stated to CS-1 that she (SMITH) had to check the storage unit to see how much drugs BROOKS had left for her.

25. On April 6, 2023, I met with store employees of the U-Haul Moving and Storage store, located at 415 Odlin Road in Bangor, Maine. I requested information on customers Matthew BROOKS and Cecelia SMITH. Store employees subsequently contacted U-Haul manager Matthew FERNALD, who stated he would provide me with the information on BROOKS and SMITH with the issuance of an Administrative Subpoena. On that date, I prepared a DEA Administrative Subpoena and returned to U-Haul. Upon serving the store employees with the subpoena, they again contacted Manager FERNALD. FERNALD stated he would meet me at the U-Haul store in approximately one half hour. I then left with the intention of returning in one half hour.

26. Upon departing the U-Haul parking lot, I observed BROOKS and SMITH inside their tan colored Honda CRV (Maine registration 8768ZH) across the street from the U-Haul. As I drove away from U-Haul and towards the MDEA Office, BROOKS and SMITH began following me at a close distance. I then contacted TFO Richards and DEA SA Scott Rochefort, who responded by following BROOKS and SMITH. BROOKS and SMITH continued to follow me as I changed directions, and ultimately stopped in the parking lot of Dunkin Donuts on Odlin Road in Bangor, Maine. At times during this incident, I observed what appeared to be Smith using a cellular telephone to film my activities. There, BROOKS confronted me before taking off at a high rate of speed while traveling the wrong way on a one way portion of Odlin Road.

27. Agents subsequently met up with BROOKS at the intersection of Odlin Road and Ammo Industrial Park. BROOKS again confronted Agents and asked why I was inquiring about BROOKS at U-Haul. BROOKS confirmed he was contacted by U-Haul and was alerted to the DEA investigation. BROOKS was advised that DEA believes he and SMITH are involved in drug trafficking. BROOKS stated SMITH is an addict and "does what she has to do" but denied he or SMITH were drug traffickers. BROOKS also stated that they could film whomever they wanted to.

28. On that date, Bangor Police Officer Shane Smith arrived and arrested SMITH on five active arrest warrants for failure to appear. Officer Smith took possession of SMITH's cellular phone, which was subsequently transferred to the custody of DEA.

29. On April 7, 2023, following SMITH's arrest by Bangor Police Officers, SMITH again contacted CS-1, this time utilizing phone number 207-944-3221. Prior to

11

SMITH's arrest, SMITH regularly communicated with CS-1 while using phone number 207-631-0434. Based on these facts, I believe SMITH's purple iPhone seized by Bangor Police Officers, and then transferred to DEA ("Cellular Telephone"), is SMITH's 207-631-0434 phone. At this time, I am not able to confirm the telephone number, IMSI, or any other identifiable characteristics of the "Cellular Telephone" other than its brand and color.

### Cellular Telephone Toll Information

30. On March 6, 2023, I submitted a subpoena to Verizon Wireless, requesting subscriber and toll information for phone number 207-631-0434, for a 30 day period beginning on February 3, 2023 through March 6, 2023. On March 27, 2023, Verizon responded to that subpoena. Phone number 207-631-0434 was identified as a Verizon Trac Phone with no subscriber information. The description of the device associated to 207-631-0434 was identified as an "iPhone 12 purple E", believed to be the "Cellular Telephone."

31. A toll analysis of the aforementioned period identified the highest frequency contact of SMITH's phone number 207-631-0434 was phone number 207-991-8521, identified as the cellular telephone of Matthew BROOKS. Between February 6, 2023 and February 27, 2023, SMITH had 184 contacts with phone number 207-227-2886, a phone used by Anne CYR of Ashland, Maine. In 2016, CYR was convicted of unlawful possession of scheduled drugs in Aroostook County, Maine. CS-1 identified CYR as a long time drug customer of SMITH.

32. Between February 6, 2023 and February 12, 2023, SMITH had 6 contacts with phone number 207-944-5577, a phone number associated to Rachel HAMM. On

May 26, 2022, Allen HENRY was arrested by Brewer, Maine Police Officers for possession of 870 grams of fentanyl and 40 grams of crack cocaine. Brewer Police Officers subsequently obtained a search warrant for HENRY's phone and identified phone number 207-944-5577 saved as a contact for Rachel HAMM. CS-1 further identified HAMM as a criminal associate of SMITH. CS-1 stated HAMM and SMITH have sold drugs to one another in the past. I know HAMM from prior DEA investigations in Bangor, Maine, and know her to be involved in the distribution of fentanyl and crack cocaine.

33. Between February 3, 2023 and February 23, 2023, SMITH had 31 contacts with phone number 207-951-2609. I know that phone number to be used by Emory Leif JAMES, a Connecticut based drug trafficker who distributes drugs in Bangor, Maine. JAMES was identified on January 26, 2023, during the arrest of Eugene CASTON in Bangor, Maine. On that date, CASTON was arrested while in possession of over 120 grams of crack cocaine, 90 grams of heroin, 27 grams of fentanyl, and smaller quantities of methamphetamine and suspected fentanyl pills. During a post arrest interview of CASTON, CASTON identified JAMES, and his phone number (207-951-2609), as a local Bangor, Maine source of supple for drugs.

34. Between February 4, 2023 and March 2, 2023, SMITH's phone was in contact with a phone number I know to be used by CS-1, approximately 270 times.

35. Based on the above toll information, I believe SMITH is utilizing the "Cellular Telephone" in furtherance of her drug trafficking activities. Based on confidential source intelligence that I have received, I know SMITH uses application and social media platforms on her "Cellular Telephone", in addition to traditional voice calls

and text messages, to communicate with co-conspirators. The above toll information only represents a portion of the potential evidence that I believe to be contained within the "Cellular Telephone."

## Training and Experience

36. I know that narcotics traffickers regularly use cellular telephones to maintain contact and communicate with their sources of supply, their customers, and their couriers. The devices are used to send and receive drug related text and e-mail messages that sometimes remain on the phones. The devices are also used to save contact names and numbers for sources of supply, customers, and couriers. In this case, it is probable that the Telephones, and/or any Subscriber Identity Module ("SIM") card that may be enclosed within Telephones, contain names, numbers and communications of such people involved in the distribution of drugs. I know that SIM cards are portable memory chips located in some cellular devices that can store user identification information, location, phone number, network authorization data, personal security keys, contact lists and/or stored text messages,

37. Cellular devices, similar to the one described above in "Items to be Searched" and in Attachment A, have the ability to take, save/store, send, and receive photographs and videos, instant messages, voice messages, and text messages. Similar devices also have the ability to store information (including phone books/contact lists, calendars (including travel information), and call history features including incoming, outgoing, and missed calls), and to access the internet. The capability of cellular devices similar to the one identified in paragraph "b" to carry out these different functions

varies from phone to phone. Only upon examining the cellular device in question will the full extent of its capabilities, and of the data stored on it, be determined.

38. Based on my training and experience and conversations with other law enforcement agents who conduct narcotics trafficking investigations, I know that drug traffickers use these devices to store photographs of associates, search the internet for various drug related purposes, and access their social media accounts and those of their associates. I know that drug traffickers commonly utilize such social media accounts to communicate with their sources of supply, their customers, and their couriers. I have known drug traffickers to take photographs of themselves with their criminal associates, drugs, firearms, and drug proceeds.

39. Based on my training and experience, I also know that drug traffickers commonly use multiple cellular telephones to compartmentalize different members of a conspiracy and/or to avoid electronic detection by law enforcement. It is also common for drug traffickers to use cellular telephones registered in the names of others and/or pre-paid phones that do not require a registration name to be on file with a phone company in order to avoid being linked to the phones by law enforcement.

40. Based on my training and experience, my involvement in this investigation, and conversations with other law enforcement agents who conduct narcotics trafficking investigations, I know searches of cellular telephones have yielded evidence of contact and association between and among narcotics traffickers, customers and associates, including the items described in "Items to Be Seized," above. Such evidence may further establish an individual's intent to distribute controlled substances, the actual distribution of such substances, and/or conspiracies to engage in the

distribution, or possession with intent to distribute, of such substances. Based upon the facts described above, there is probable cause to believe that Smith is involved in the distribution of narcotics and a search of the Cellular Telephone described above would likely produce evidence of such distribution, possession with intent to distribute, associations, drug customers, and drug suppliers.

## Conclusion

41. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that one or more violations of Title 21, United States Code, Section 841, *et seq.* has occurred. There is further probable cause to believe that the Cellular Telephone contains the items of evidence described in "Items to be Seized," which constitute evidence of those violations. Accordingly, a search warrant is requested.

Respectfully submitted,

Nicholas C. Rich
Special Agent
U.S. Drug Enforcement Administration

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Apr 11 2023

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title